Toomey, J.
I. BACKGROUND
On June 2, 1992, plaintiffs (hereinafter the “Landlord”) entered this complaint in the Westborough District Court seeking possession of certain leased commercial premises and rent allegedly due from defendants (hereinafter the “Tenant”). Tenant responded with an answer, reciting the customary defenses to a summary process complaint and adding a counterclaim seeking damages for various asserted contractual breaches by, and other compensation due from, Landlord.
After trial in the Westborough District Court, judgment was ordered by Wauckowski, J., for Landlord in the amount of $8,100.00.[1] Landlord appealed, and on January 26, 1993, the matter was removed to this Court for trial de novo.
The trial was commenced, jury waived, in the Superior Court on April 12, 1999, and counsel were permitted until May 1, 1999, to file memoranda in the nature of closing argument. Based upon the evidence adduced at trial and the submissions of counsel, this Court finds as follows:
II. FINDINGS OF FACT
1. On October 5, 1983, Tenant and the Landlord’s predecessor (“lessor,” whose liabilities and entitlements were assumed by Landlord) entered into a contract entitled “commercial lease” for the premises owned by lessor and to be occupied by Tenant. Appended to the lease was a purchase and sale agree *481 ment by which Tenant obtained an option to buy the leased premises. Tenant delivered a $5,000.00 deposit to lessor in connection with the option. The agreement contemplated the payment of an additional deposit by Tenant of $62,500.00 when the option was executed. The total purchase price was to be $715,000.00.
2. Also appended to the lease were two addenda, the first of which further defined the terms of the option to purchase referenced in the purchase and sale agreement, and the second of which defined the terms of the leasehold, including the monthly rent (3 percent of Tenant’s gross sales) and lessor’s obligation to return Tenant’s $5,000.00 deposit “if tenant does not exercise option to purchase.” By its terms, the lease commenced on December 1, 1983, and expired on November 30, 1984.
3. The lease document contained, inter alia, a number of printed conditions describing Tenant’s obligations, which conditions were over stamped with the word “DELETE.” Included among those overstamped conditions were provisions purporting to obligate Tenant to pay real estate taxes assessed against the leased premises. At the time Tenant executed the lease, the overstamping was present on said provisions. This Court finds as fact that the parties to the lease did not contemplate that Tenant would be obligated by the lease to pay real estate taxes.[2]
4. On November 29, 1984, Tenant gave timely notice of its exercise of the option to purchase and included a check for the additional deposit required by the purchase and sale agreement. Lessor rejected Tenant’s exercise of the option and proffer of the additional deposit.[3]
5. Notwithstanding the expiration of the lease and the rejection of its offer to purchase, Tenant remained in possession of the premises as a tenant-at-will and continued doing business. Tenant timely paid lessor the rent required by the lease until April 1990.
6. On April 27, 1990, lessor conveyed title to the leased premises to Landlord. On June 8, 1990, Landlord notified Tenant of the change in ownership and requested that rent payments be delivered to Landlord. Tenant did not comply with Landlord’s request and made no further rent payments.
7. On May 19, 1992, Landlord served a notice to quit on Tenant, asserting Tenant’s failure to pay rent. Tenant ceased doingbusiness on September 30, 1992, and surrendered the premises to Landlord on October 15, 1992.
8. The amount of rent due from Tenant to Landlord, calculated by reference to the provisions of the 1983-1984 lease and payments made pursuant to the ensuing 1984-1990 tenancy-at-will, is $82,714 41 for the period of nonpayment (May 1990-October 1992).
III. DISCUSSION.
By its summary process complaint, Landlord seeks possession of the premises and rent due for the period of May 1990 through October 1992. The “Stipulation of the Parties,” received at trial as Exhibit No. 1, touches upon all of the elements of a summary process claim, and this Court finds all of those elements by a fair preponderance of the evidence. Landlord is, therefore, entitled to prevail upon its claim for possession[4] and past-due rent.
There remains, however, a dispute between the parties as to the amount Landlord ought to recover. While the parties have stipulated that the amount of rent due for the period of Tenant’s nonpaying occupancy is $82,714.41, Tenant asserts, in counterclaim, that certain amounts ought to be credited to Tenant. By category, Tenant claims credits 1) for its deposit paid pursuant to the purchase and sale option agreement, 2) for improvements to the property, 3) for certain items of personalty purchased at auction, and 4) for real estate taxes paid upon the FY 1984 assessment.[5] Landlord resists the diminution of its rent recovery principally because the vehicle chosen by Tenant to effect its asserted credits is procedurally illegitimate. This court, for the reasons recited below, concurs with Landlord’s view.
Tenant has advanced his demand for credit via the procedural device of counterclaim. He suggests that the common law doctrines of set-off and recoupment and the statutory remedy of improvement allowance (G.L.c. 237, §16) entitle him to reduce the amount of rent he owes Landlord. Although the Court will voice, in the matter at bar, no opinion as to the merits of the counterclaim, the Tenant may well be correct. He has, however, presented his common law and statutory grounds for credit in a context, to wit, counterclaim, contrary to law, and this Court, in the face of a clear statutory limitation upon the form of action, is disinclined to execute an end-run around the legislative will.
The procedural underpinnings of this summary process litigation are founded upon G.L.c. 239. Because summary process is wholly a creature of statute, the statutory language defines the boundaries of the remedy, including the availability of counterclaim, intended by the Legislature. The right of counterclaim has its genesis in the statute, G.L.c. 239, §8A, and that right is reserved by said §8A to disputes involving residential property. There is, therefore, no statutory foundation for the pursuit of a counterclaim, as at bar, in a dispute involving only commercial property. Absent such a statutory foundation, the counterclaim, no matter its substantive merit, cannot be maintained.
Tenant would argue that, while §8A recognizes the availability of counterclaim in a residential summary process action, none of §8A’s terms expressly precludes the availability of counterclaim in a commercial summary process suit. That argument is excessively literal and pays no respect to the well established principle of statutory construction that, if the legislature omits to establish a right in the circumstances of *482 its establishment of other, related rights, the legislature ought to be taken to have rejected the right so omitted. See Protective Life Ins. v. Sullivan, 426 Mass. 615, 620 (1997). At bar, the establishment of the §8A right to counterclaim in limited circumstances (viz, residential summary process cases) is persuasive that the legislature meant to reject the right in other circumstances (viz, commercial summary process cases).[6] Given that legislative purpose in §8A, Tenant’s reliance upon Massachusetts Summary Process Rules 1 and 5 and Massachusetts Rules of Civil Procedure 2, 13, and 18(a) is misplaced. A statute always trumps a rule.
Whether Tenant’s contention is grounded in common law (set-off, recoupment) or in legislation (G.L.c. 237, § 16), the contention must be brought to the court in a manner authorized by law. Counterclaim, in a summary process action where the premises are commercial, is not so authorized. Accordingly, this Tenant’s requests for credit via counterclaim cannot be entertained.[7]
IV. CONCLUSION
For the reasons aforestated, Landlord is entitled to recover rent due in the amount of $82,741.41. Landlord is not entitled to recover, pursuant either to the lease or to the tenancy-at-will, amounts it paid as real estate taxes because this Court finds that nothing in the lease or the tenancy obligated Tenant to bear the burden of taxes. Furthermore, Landlord is not entitled to recover attorney fees as an element of damages occasioned by Tenant’s breach by nonpayment of rent, notwithstanding the lease provision apparently authorizing such recovery, because Landlord’s summary process complaint did not seek such relief.
Tenant is not entitled to diminish by set-off, recoupment, improvement allowance, or otherwise, rent due to Landlord because the device of counterclaim by which Tenant asserts such entitlement is not a proper procedural vehicle in the circumstances.
V. ORDER
Judgment is to enter for plaintiffs on the claim and on the counterclaim.

 The District Court found Landlord to be entitled to rent from April 1990 through October 1992 (87,000.00) less set-offs for improvements by Tenant ($68,000.00), tax payments by Tenant ($5,300.00) and a purchase deposit by Tenant ($5,000.00).

 Although the evidence established that Tenant did pay the real estate taxes for the first half of FY1984 (to wit, July 1983-December 1983), this Court concludes from the terms of the lease and Tenant's refusal to pay subsequent tax bills, that Tenant was not obliged so to pay.

 Although not strictly pertinent to the instant summary process matter, and not well established by the evidence, Landlord suggests that lessor's rejection was grounded upon Tenant’s omission to pay the real estate taxes for the second half of FY 1984 (to wit, January 1984-June 1984). As noted supra, this Court does not find that Tenant was so obligated, and, accordingly, lessor's rejection may well have been illegitimate.

 Tenant, having already surrendered possession on October 15, 1992, pursuant to Landlord’s notice to quit, this Court’s action merely confirms the status quo as to possession.

 The Court has accepted, arguendo, Tenant’s claims for credit because, in view of the disposition, infra, of Tenant's counterclaim, there is no need for the Court to determine whether Tenant is entitled to one or more of the asserted credits, and, if so, whether the amounts demanded are appropriate.

 Similarly, Tenant’s contention that §8A is concerned solely with “defensive” counterclaims and thus does not, either by expression or by implication, preclude “offensive" counterclaims, such as at bar parses §8A too closely. Nothing in the statute suggests that it is concerned solely with “defensive” counterclaims. An equally compelling reading of §8A is that it sought to deal with both “defensive” and “offensive” counterclaims, authorizing either in residential summary process action and neither in commercial summary process actions. Acknowledgment in Boston Housing Authority v. Hemmingway, 363 Mass. 184 (1973), of the availability of a defensive remedy to the tenant does not suggest that only defensive remedies are treated (and limited) by §8A, and that, therefore, a broader remedy exists elsewhere in the law.

 This Court offers no opinion as to the merits of Tenant’s requests for credit or as to the availability, at this time, of a procedural vehicle by which those requests might be presented to a court.